UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) ) ) ) v. ) ) **VINCENT CARUSO,** ) ) **Defendant.** ) ) | ) ) ) ) ) ) **Criminal No. 21-10312-DJC** ) ) ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                          **November 21, 2025**

**I.     Introduction**

Petitioner Vincent Caruso ("Caruso") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), alleging ineffective assistance of counsel. D. 94. Having considered the Petition, D. 94, the government's opposition, D. 99, and Caruso's further memorandum in support of the Petition, D. 106, and for the reasons discussed below, the Court DENIES the Petition. In light of this ruling, the Court also DENIES Caruso's motion to amend the Petition, D. 112.

**II.    Standard of Review**

An incarcerated person may seek post-conviction relief under § 2255 if his sentence "(1) was imposed in violation of the Constitution;  (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). It is the petitioner's burden to make out a claim for such relief. Id.

1

### III.    Factual and Procedural Background

####    A.    Case Filed Against Caruso and October 14, 2021 Plea Agreement Reached

On June 29, 2021, Caruso and three co-defendants were named in a complaint charging him with conspiracy to manufacture, distribute and possess with intent to distribute 400 grams or more of fentanyl, cocaine, cocaine base, marijuana and other controlled substances; money laundering; conspiracy to possess firearms in furtherance of and the use and carrying of firearms during and in relation to a drug trafficking crime; and conspiracy to posses equipment, products and materials used in the manufacture of controlled substances.  D. 2-1 at 1-2.

Pursuant to a plea agreement, dated October 14, 2021 under Fed. R. Crim. P. 11(c)(1)(C) ("October 14, 2021 Agreement"), D. 48, the government filed an Information on October 22, 2021, D. 46, charging Caruso with conspiracy to manufacture, distribute and possess with intent to distribute 400 grams or more of fentanyl and methamphetamine in violation of 21 U.S.C. § 846 (Count I); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count II); conspiracy to possess firearms in furtherance of and use and carry firearms during and, in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count III); and conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count IV).  D. 46.

In relevant part, the October 14, 2021 Agreement provided that Caruso would pled guilty to the Information; the government would not charge him with operation of a continuing criminal enterprise in violation of 21 U.S.C. § 848 or possession of a machine gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c )(1)(B) (ii), both of which carried minimum mandatory sentences of 20 years and 30 years (latter of which would be on and after the sentence for the underlying drug trafficking crime), respectively; a sentencing recommendation of 180

2

months to 240 months of imprisonment; and Caruso waived his right to challenge his conviction and sentence on direct appeal or in any other proceeding.  D. 48 at 1-7.

With these filings, the Rule 11 plea hearing eventually was set for December 15, 2021.  D. 50.  Two days before that hearing, Caruso moved to cancel or continue it, noting that he "does not wish to proceed with the hearing."  D. 54.  The Court kept the hearing date, indicating that it would address Caruso's motion at that time.  D. 55.

### B. Caruso Repudiates October 14, 2021 Plea Agreement

At the December 15, 2021 hearing, the Court heard from counsel and Caruso.  Caruso's counsel indicated that he was not seeking merely to continue the Rule hearing but to cancel it entirely.  D. 60; D. 97 at 4.  When the Court addressed Caruso directly to confirm his intentions, he indicated that he "want[ed] to get indicted."  Id.  Given that the government was agreeing not to charge him with certain, additional charges, the Court addressed Caruso directly to confirm his intention to repudiate the October 14, 2021 Agreement.  Id. at 5.  Caruso indicated that he understood that, under the October 14, 2021 Agreement, the government was agreeing not to press certain charges against him including some that carried minimum mandatory sentences.  Id. at 5-6.  He also indicated that he understood that, without the October 14, 2021 Agreement, the government was now free to pursue the additional charges against him.  Id. at 6-7.  Caruso also indicated that he had the opportunity to discuss the matter with his attorney.  Id. at 7.  Finally, he acknowledged that his decision not to accept the October 14, 2021 Agreement was a voluntary one and that no threats had been made against him in regard to this decision.  Id.  The government then indicated that it would seek an indictment against Caruso and that it would do so before the end of January, Caruso having agreed to exclude time under the Speedy Trial Act through January 28, 2022. D. 59; D. 62.

3

### C. Caruso is Indicted

On January 19, 2022, a federal grand jury returned a five-count indictment against Caruso charging him with conspiracy to manufacture, distribute and possess with intent to distribute 400 grams or more of fentanyl and methamphetamine in violation of 21 U.S.C. § 846 (Count I); conspiracy to possess a firearm in furtherance of and use and carry firearms during and, in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(o) (Count II); use and carrying of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(I) and (B)(ii) and 18 U.S.C. §2 (Count III); conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count IV); and money laundering conspiracy in violation of 18 U.S.C. § 1956(h). D. 63. This indictment included, as part of Count III, the possession of a machinegun in furtherance of a drug trafficking crime in violation of § 924(c)(1)(B)(ii) (which carries a consecutive, thirty-year minimum mandatory sentence) which the government had agreed not to charge in the now repudiated plea agreement. Compare D. 48 at 2 with D. 63 at 5. On February 5, 2022, the government filed notice of Caruso's breach of the October 14, 2021 Agreement (i.e., by not pleading guilty to the previously filed Information in accordance with the plea agreement he had signed, D. 48, 60) and that the October 14, 2021 Agreement was no longer binding and had been withdrawn. D. 70. On February 8, 2022, Caruso was arraigned on the charges in the indictment. D. 71.

### D. Caruso Enters March 7, 2022 Plea Agreement and Pleads Guilty

One month later, on March 8, 2022, the government filed an assented-to motion to schedule a Rule 11 hearing, D. 73, and the parties filed a new plea agreement, dated March 7, 2022 ("March 7, 2022 Agreement"). D. 72. Under the terms of the March 7, 2022 Agreement, Caruso agreed to plead guilty to Counts I, II, IV and V but only so much of Count III as charged the use and carrying

4

of a firearm during and in relation to and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), but he would not plead guilty to the portion of that charge that alleged that "at least one of the firearms is a machinegun" (which would have subjected him to a consecutive, minimum mandatory sentence of 30 years, or 360 months, 18 U.S.C. § 924(c)(1)(B)(ii)).  D. 72 at 1-2.

At the March 15, 2022 plea hearing as to the indictment against Caruso, the Court conducted a colloquy with Caruso, took his guilty plea as to Counts I, II, IV and V and as much of Count III as described above and given that the March 7, 2022 Agreement would be binding on the Court as to the recommended sentencing range (which was 180 to 270 months, D. 72 at 6; D. 99 at 10), deferred acceptance of the guilty plea until sentence.  D. 76.  During the course of the colloquy, Caruso indicated that he understood the charges against him, had discussed them with his counsel and that he was "fully satisfied with the counsel, representation and advice given to [him] in this case by [his counsel]."  D. 99 at 6-8 (quoting Rule 11 hearing transcript, Pl. Tr. 9-12).  Caruso also affirmed that he entered into a plea agreement with the government and that he had the opportunity to read it and discuss it with his counsel before he signed it and that he understood the terms of the agreement.  Id. at 8.  Among other things, the Court also asked Caruso about his understanding of the appellate waiver in the March 7, 2022 Agreement.  Id. at 10.  He confirmed that he understood that he had waived his right to challenge his conviction or his sentence and that he had discussed this provision of the March 7, 2022 Agreement with his attorney.  Id.

At the June 30, 2022 sentencing, the Court adopted Probation's calculations of the advisory Guideline Sentencing Range ("GSR").  D. 92 at 5; PSR ¶ 322.  The parties did not object to these calculations but they differed from those in the March 7, 2022 Agreement which had not included a stash house increase and Probation applied a four-level increase in the offense level for Caruso's

5

supervisory role whereas the parties had applied only a three-level role adjustment. D. 92 at 5; PSR ¶¶ 256-57. There was no objection to the Criminal History Category of II. PSR ¶ 281. Accordingly, the GSR was 292 to 365 months plus 60 months on and after for the § 924(c) charge in Count III. PSR ¶ 322. Consistent with the March 7, 2022 Agreement, the government recommended a sentence of 270 months (the high-end of the agreed-to range in the agreement) and Caruso recommended a sentence of 180 months (the low-end of that range, comprised of the ten-year minimum mandatory sentence for the drug offense, Count I, PSR ¶ 320 and minimum mandatory of five years on and after on the Section 924(c) firearm charge, Count III, PSR ¶¶ 320-21). D. 84 at 1; D. 86 at 4-5; D. 92 at 23, 30. After hearing the recommendations of counsel, a statement from Caruso and having considered all of the 18 U.S.C. § 3553(a) factors, the Court rejected the defense recommendation but imposed a sentence lower than that recommended by the government, noting:

> Based, however, on all of the facts and information before me, I can't say that a sentence that is at the minimum mandatory [of 180 months] is appropriate here given the scope of conduct, given the breadth of the conspiracy, given [Caruso's] role in directing it, given the use and possession of firearms in furtherance of or even the money laundering charges as well for which there is significant evidence. All of those demand a substantial sentence. And considering all of the § 3553(a) factors, I will accept your guilty plea and I will impose a sentence of 250 months of imprisonment, 60 months of supervised release . . . [no fine], . . . the mandatory $500 special assessment, and I will incorporate the government's forfeiture motion.

D. 92 at 40. The Court then accepted Caruso's guilty plea and formally imposed sentence. Id. at 40, 41-43. At the end of the hearing, the Court asked Caruso if he remembered the portion of his Rule 11 hearing in which it had asked him about the part of his plea agreement in which he "waived or gave up certain of [his] appellate rights." Id. at 44. When Caruso indicated that he did, the Court advised him, among other things, that "[t]o the extent that any of your appellate rights survive that waiver, . . . you have the right to

6

appeal your conviction and sentence" and that he "must file any notice of appeal within 14 days after the entry of my judgment." Id. The Court entered judgment on July 11, 2022. D. 90, 91.

Caruso did not file a timely notice of appeal. D. 107 (Notice of Appeal filed September 8, 2023). The First Circuit denied his appeal on this basis. D. 110.

## IV.    Grounds for Relief

In the Petition, D. 94, Caruso contends that he is entitled to relief under § 2255 because he allegedly received ineffective assistance counsel. Specifically, he alleges that this counsel: 1) failed to file a Notice of Appeal on his behalf, D. 94 at 4; 2) failed to investigate or challenge Count IV, the conspiracy to commit Hobbs Act robbery offense, id. at 5; 3) failed to seek an evidentiary hearing as to the "ghost weight" as to the drug charge, id. at 5,7; and 4) misinformed him about his sentencing exposure, D. 94 at 5. For the reasons discussed below, each of these grounds fail and the Court DENIES the Petition.[1]

## V.    Discussion

### A.    **Ineffective Assistance of Counsel**

To demonstrate ineffective assistance of counsel, a petitioner must show that: "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'there is a

---

[1] To the extent that Caruso also alleges that the government breached the March 7, 2022 Agreement, D. 94 at 4, 6, that his counsel should have sought a reduction of his sentence based on the "harsh time" of his detention, id. at 7, or that his counsel did not answer his girlfriend's calls about hiring a private investigator, id., he has not provided a factual basis for same or explained how any of these allegations amount to ineffective assistance of counsel. See D. 99 at 31-33. Accordingly, the Court DENIES the Petition on these grounds as well. Additionally, for the reasons articulated in the government's opposition, the 2023 amendments to the U.S.S.G. did not affect the calculation of Caruso's CHC, D. 99 at 35-36; PSR ¶¶ 278-79, and, accordingly, do not provide a ground for habeas relief and the Court DENIES this ground as well.

7

reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" United States v. Constant, 814 F.3d 570, 578 (1st Cir. 2016) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

The reasonableness of the attorney's representation is viewed "as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Judicial scrutiny of a counsel's representation and performance must be "highly deferential" and the Court should make "every effort . . . to eliminate the distorting effects of hindsight." Bell v. Cone, 535 U.S. 685, 698 (2002) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner must show "that there is a reasonable probability" that, but for the attorney's deficient performance, there would have been a different outcome. Strickland, 466 U.S. at 694. A "reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Johnston v. Mitchell, 871 F.3d 52, 64 (1st Cir. 2017) (quoting González-Soberal v. United States, 224 F.3d 273, 278 (1st Cir. 2001)), cert. denied, 138 S. Ct. 1310 (2018). When this claim is raised as to potential sentencing prejudice, the defendant must demonstrate that "absent the [counsel's] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant" the sentence. United States v. Sampson, 820 F. Supp. 2d 202, 220 (D. Mass. 2011).

    1. *No Ineffective Assistance of Counsel As to a Notice of Appeal*

Caruso claims that his counsel was ineffective for not filing a Notice of Appeal. As to such a claim under the first prong of Strickland, "a defense attorney's representation is constitutionally deficient if the attorney either 'disregards specific instructions from the defendant to file a notice of appeal' or fails (under certain circumstances) to consult with the defendant about an appeal." Roja-Medina v. United States, 924 F.3d 9, 15 (1st Cir. 2019) (quoting Roe v. Flores-Ortega, 528

U.S. 470, 480 (2000)). As to the second consideration, there is "a duty to consult the defendant about an appeal only 'when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" United States v. Martinez Castro, No. 15-cr-10338-FDS, 2021 WL 4973844, at *4 (D. Mass. Oct. 25, 2021) (quoting Flores-Ortega, 528 U.S. at 480).

Caruso's claim fails under this first prong of Strickland. As the government points out, Caruso does not allege that he instructed his counsel to file a Notice of Appeal. D. 99 at 21 (citing D. 94). Instead, he suggests that he could not do so because he was on "lockdown" and did not have access to a phone which is belied by the exhibits attached and incorporated into the government's opposition. D. 99-1, 99-2; D. 99 at 21 & n. 3. To the extent that Caruso claims that he tried to contact counsel on a BOP phone, he first was transferred to BOP custody on August 5, 2022, D. 99-3, after the 14-day period to file a notice of appeal of the judgment entered on July 11, 2022. D. 90. Moreover, from the day after his June 30, 2022 sentencing, D. 99, until July 11, 2022, the day the judgment was entered, Caruso made 97 calls from the Plymouth jail, none of them to phone numbers associated with his attorney. D. 99 at 22; D. 99-1. There is no indication either that Caruso requested that his counsel file a notice of appeal and, therefore, no showing that his counsel was deficient in this respect. Moreover, given this record, the Court does not conclude that Caruso has "reasonably demonstrated to counsel that he was interested in appealing," Flores-Ortega, 528 U.S. at 480, such that any duty for the attorney to consult with him regarding arose. This is particularly true where he has not identified any viable grounds for an appeal. Moreover, it cannot be said here that "a rational defendant would want to appeal." Rojas-Medina, 924 F.3d at 16. First, as discussed above, Caruso knowingly and voluntarily waived his right to appeal both

9

his conviction and his sentence as evidenced by the terms of the March 7, 2022 Agreement and the Court's colloquy with him regarding same. Second, an appeal would have been a breach of that agreement. Such breach would no longer bind the government to the agreed-to range of 180 to 270 months and would have subjected Caruso to higher sentencing exposure as to the portion of Count III (alleging possession of the machinegun). D. 72 at 10; D. 99 at 24.

Additionally, Caruso has failed to show prejudice under Strickland, largely for the reasons stated above which is that he had waived his right to appeal and no viable grounds for appeal have been identified. Accordingly, the Court denies this ground of the Petition.

     2.  *No Ineffective Assistance as to an Alleged Failure to Investigate*

Caruso alleges that his counsel was ineffective because he failed to dismiss Count IV, the conspiracy to commit Hobbs Act robbery, claiming that he had no involvement in this offense. D. 94 at 5. It cannot be deficient representation to fail to file a futile motion and such a motion would have been futile here where the elements of Count IV were sufficiently pled. D. 63 at 6. As to the claim that he was not involved, the evidence summarized in the PSR (to which he did not object) belie this contention where various cooperating witnesses described his involvement in the conspiracy, Caruso was captured on surveillance next to the victim's residence and he received a portion of the proceeds. See PSR ¶¶ 62-69. Accordingly, Caruso has failed to show that his counsel was deficient in failing to file such motion or that the alleged failure to do so prejudiced him under the Strickland prongs, respectively, given the futility of doing same. The Court denies the Petition on this ground.

     3.  *No Ineffective Assistance As to an Evidentiary Hearing for Drug Weight*

Caruso also claims that his counsel was deficient in failing to seek an evidentiary hearing to challenge the 12 to 36 kilograms of fentanyl. PSR ¶¶ 254-55. Presumably, Caruso is

suggesting that an evidentiary hearing would have resulted in a finding that the weight attributable to him would be less than 12 kilograms, such that the offense level for the drug trafficking offense would have been lower. He offers no factual basis for such a claim and there is none on this record. The Court agrees with the government's assessment that the 12 to 36 kilogram range was a "conservative" drug weight. D. 99 at 27. The record at sentencing was that Caruso was resupplied with fentanyl every five to six week and one of Caruso's own selfie videos showed him in possession of 5 kilograms of fentanyl on one day when he was resupplied. PSR ¶¶ 22-28, 83-109, 123-44, 183-246. Given this evidence, the upper limit of 36 kilograms of fentanyl was a conservative estimate. Accordingly, Caruso has failed to show have it was deficient for his counsel not to seek an evidentiary hearing as to drug weight or that the failure to do so prejudiced him. The Court denies the Petition on this ground.

          4.     *No Ineffective Counsel as to Claim that Caruso was Misadvised of His Sentencing Exposure*

Caruso also claims that his counsel misadvised him about the sentencing range. D. 94 at 5. He has not developed a factual basis for this claim. Even assuming *arguendo* that he had shown that counsel's performance was deficient in this regard, he has failed to show that such was prejudicial to him on this record. At the plea hearing, the Court advised him of the statutory maximum sentences that applied to each of the counts and deferred acceptance of his guilty plea until sentencing given the binding nature of the sentencing range in the plea agreement, Pl. Tr. at 11-13, 33. Moreover, the March 7, 2022 Agreement, signed by Caruso, contained that sentencing range. D. 72 at 5-6, 12. Significantly, the Court imposed a sentence of 250 months, which was within range that Caruso was advised of in the terms of March 7, 2022 Agreement he signed, the terms of which he agreed he understood during his plea hearing and as reflected in the PSR. PSR ¶ 324. It is hard to fathom how Caruso could be prejudiced here where the record indicates that

11

he was properly informed of the sentencing range at the critical junctures in this case and then received a sentence within that range. Accordingly, the Court denies the Petition on this ground.

5.  *No Ineffective Assistance of Counsel as to Caruso's CHC*

Caruso seems to suggest that his counsel should have argued that he was in CHC I instead of CHC II. D. 94 at 7; D. 106 at 10; see D. 95 at 3. Caruso provides no viable basis for this contention and, as the government points out, he does not appear to suggest that his CHC was incorrectly calculated under the USSG. D. 99 at 31. Moreover, the Court does not find the arguments presented in this memorandum, D. 106 at 10, persuasive on this point. Indeed, his counsel did argue at sentencing that CHC II overstated his criminal history. D. 92 at 28-29. The Court made a point of noting that the CHC was not driving the sentence as much as other 3553(a) factors were, particularly the scope of his crimes and his role in them. Id. at 29.

6.  *Caruso is Not Entitled to An Evidentiary Hearing on the Petition*

Caruso seeks an evidentiary hearing, D. 106 at 2, but such hearing is not warranted here. A habeas petitioner is not entitled to an evidentiary hearing as a matter of right, David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) and "a district court properly may forgo [such hearing] when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" Id. (internal citation omitted). The Petition does not warranted an evidentiary hearing where the allegations are deficient for the all of the reasons addressed above and there are no factual disputes that need to be addressed to resolve the grounds in the Petition.

## VI.     Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D. 94, and his motion to amend the Petition, D. 112.

A petitioner may receive a certificate of appealability only if he has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion. Id. Accordingly, the Court is not inclined to issue a certificate of appealability but will give Petitioner until December 22, 2025 to file a memorandum if he desires to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge